**CENTRAL GULF LINES, INC., Lash Carriers, Inc., and Atlantic Lash Carriers, Inc., Plaintiffs,**

v.

**COOPER/T. SMITH, STEVEDORING, Defendant.**

**No. 86 Civ. 8208 (SWK).**

United States District Court, S.D. New York.

July 8, 1987.

---

Walker and Corsda, by Constantine W. Papas, New York City, for plaintiffs.

McGlinchey, Stafford, Mintz, Celini & Lang, by James M. Tompkins, New Orleans, La., Bodiak and Will, by Roman Bodiak, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This case arises from damage to a cargo of aluminized steel coils. Defendant Cooper/T. Smith Stevedoring ("Smith") moves to dismiss the complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and in the alternative on grounds of *forum non conveniens*. The motion to dismiss for lack of personal jurisdiction is granted for the reasons that follow. The Court will not reach the issue of *forum non conveniens*.

### FACTS

On December 10, 1982 Thyssen Inc. purchased 248 aluminized steel coils from a German company. The coils were loaded onto the oceanliner Atlantic Forest in Antwerp, Belgium for the journey to the United States. The Atlantic Forest, owned by Lash Carriers, Inc. and Atlantic Lash Carriers Inc. and operated by Central Gulf Inc., (collectively "Central Gulf") arrived in New Orleans on January 3, 1983.

In Louisiana, Central Gulf hired Smith to provide stevedores to transfer the coils onto a barge owned by The Valley Line Barge Company ("Valley Line") for inland carriage to Greenville, Mississippi. The stevedores Smith hired used one crane and two forklifts to place the coils along the sides of the barge. The cargo was surveyed three days later and one to two inches of fresh water was discovered along the bottom of the barge. Some of the coils showed "tide-mark rust" damage.

On December 2, 1983 Thyssen initiated a suit in the United States District Court for the Southern District of New York against Lash, Atlantic, Central Gulf, and Valley Line. The case was set for trial on June 4, 1985. On June 3, 1985, Valley Line settled with Thyssen by paying a percentage of

the total damage costs caused by the water in the hopper.

At trial on June 5, 1985 the Court permitted defendants to ammend their pleadings to assert cross claims against each other. On April 25, 1986 a judgment was entered in favor of Valley Line, holding Central Gulf liable for the damages to the coils. The Court found that there was water in the cargo hopper of the barge both at the time the stevedores commenced and completed stowage of the coils.

Central Gulf reimbursed Valley Line for the damages Valley Line had paid to Thyssen, paid Thyssen the remaining damage costs and brought the present action against Smith as the agent of the stevedores. This claim is for all costs Central Gulf has incurred as a result of the Thyssen action, including the reimbursement to Valley Line, damages paid to Thyssen, and reasonable attorney fees.

## IN PERSONAM JURISDICTION

██ The burden of establishing defendant's amenability to suit in the forum state rests with the plaintiff. *Marine Midland Bank v. Miller*, 664 F.2d 899 (2d Cir.1981). The Second Circuit has construed this to mean plaintiff need only make a prima facie showing that jurisdiction exists until an evidentiary hearing or trial is held. *Beacon Enterprises v. Menzies*, 715 F.2d 757, 768 (2d Cir.1983). In the absence of a hearing and where doubt exists on jurisdictional elements, pleadings and affidavits are to be construed in favor of plaintiff. *Id.* at 768; *Marine Midland*, 664 F.2d at 904.

██ In order to obtain jurisdiction over a defendant corporation in New York, a plaintiff must first show that a defendant has at least minimum contacts with the forum state. *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The quality and nature of a defendant's contact must be, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justicee." *Id.* at 316–17, 66 S.Ct. at 158–59.

The New York legislature has implemented this standard in N.Y.C.P.L.R. § 301 which provides that, "A court may excercise such jurisdiction over persons, property, or status as might have been excercised heretofore." In the case of a foreign corporation, section 301 incorporates the case law existing prior to its enactment, which requires that a foreign corporation be "doing business" and therefore "present" in New York. *Hoffritz Cutlery v. Amajac Ltd*, 763 F.2d 55 (2d Cir.1985); *Laufer v. Ostrow*, 55 N.Y.2d 305, 309–10, 449 N.Y. S.2d 456, 434 N.E.2d 692 (1982); *Tauza v. Susquehanna Coal Co.*, 200 N.Y. 259, 115 N.E. 915 (1917). The foreign corporation's business, or an agent's efforts on its behalf, must "not be occassional or casual, but with a fair measure of permanence and continuity." *Id* at 267, 115 N.E. 915. The plaintiff claims that this court has jurisdiction over the defendant because Smith is "doing business" in New York.

██ In determining whether the "doing business" standard has been met New York courts refer to a "simple and pragmatic test." *Bryant v. Finnish National Airlines*, 15 N.Y.2d 426, 432, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965). This test is not precise. New York courts examine the aggregate of a foreign corporation's activities in the state. Important factors are whether the corporation has an office in New York, the presence of a bank account or property, any employees working for the defendant, and the solicitation of business in the state by the company or its agent. *Liquid Carriers Corp. v. American Marine*, 375 F.2d 951, 953 (2d Cir.1967); *Frummer v. Hilton*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967); *Bryant*, 15 N.Y.2d at 432, 260 N.Y.S.2d 625, 208 N.E.2d 439.

Applying these criteria, Central Gulf has failed to make even a prima facie case for personal jurisdiction over Smith in New York. Smith has no office, telephone, property or employees in New York. It does no business as a corporation and the lawsuit in this case is totally unrelated to New York interests or concerns. In fact, plaintiff and defendant have their principal

places of business in Louisiana where the damage occurred and witnesses for both sides reside.

The only possible nexus Smith has to New York is a relationship with Odyssey Inc., an independent corporation which it retains for a monthly fee of $1650.00. Odyssey helps develop business for Smith by "word of mouth" through its worldwide contacts. Any potential business generated by Odyseey is for contracts to be performed by Smith in Louisiana and Texas. According to Odyssey, the arrangement is informal, not that of an agent. As the executive director at Odyssey states in a sworn deposition, "any business that I generate in Louisiana or Texas ... they're the beneficiary through their retainer, which they have with me as a consultant...." Odyssey does not, however, make orders or contracts that are binding on Smith.

Central Gulf argues that the type of contacts described is evidence that Oddysey consistently solicits business for Smith and is thus Smith's agent in practice if not officially. Even if this court agrees, personal jurisdiction is not appropriate.

 Under New York law, solicitation of business by an agent is not sufficient to constitute "doing business" in New York. *Baird v. Day*, 390 F.Supp. 883 (1974); *Cohen v. Vaughan Bassett Furniture*, 495 F.Supp. 849, 851 (1980). Some additional activities are necessary to render the corporation amenable to suit. *International Shoe*, 326 U.S. at 314, 66 S.Ct. at 157. Judge Friendly refered to this requirement as the "solicitation-plus" rule and wrote, "Most cases which find jurisdiction have involved financial or commercial dealings in New York." *Aquascutum of London v. S.S. American Champion*, 426 F.2d 205, 212 (1970).

There is no evidence from the record that Smith has continuous financial or commercial dealings in New York. New York courts applying the solicitation-plus rule to agents have denied jurisdiction in cases where more contact existed than in this case. In *Cohen*, a sales agent made orders for a foreign corporation and the court found no jurisdiction. Similarly, in *Baird*,

an agent that, "obtained orders and transmited them to a home office for rejection or acceptance" for an annual retainer of $232,500 did not subject the foreign corporation to suit in New York. *Baird*, 300 F.Supp. at 885. A primary consideration in these cases was that the representative did not bind the foreign corporation, but merely solicited orders for their client. In this case Odyssey likewise does not have authority to bind Smith.

Plaintiff claims Odyssey's regular and continuing representation of Smith, the monthly retainer paid, and a publishing company listing Odyssey as Smith's agent is more than mere solicitation and satisfies the state standards for doing business in New York. In support, plaintiff cites *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y. S.2d 456, 434 N.E.2d 692 (1982) and *Gelfand v. Tanner Motor Tours*, 385 F.2d 116 (2d Cir.1967).

Both these cases are distinguishable from the the present case. In *Laufer*, jurisdiction was based on a foreign corporation's hiring of sales representatives who solicited and serviced New York customers. The foreign corporation gained profits of two million dollars annually from the sales in New York. In this case Odyssey receives $18,000 annually for refering potential customers to a Louisiana company that performs services, if at all, in Louisiana and Texas.

In *Gelfand*, the defendant had a $120,000 contract with an agent to confirm and clear reservations. In finding jurisdiction the court wrote, "the services provided (by the agent) are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation would need to perform (itself) substantially similar services." 375 F.2d at 121. The services Odyssey provides for Smith are only referrals for potential business, and have nothing to do with the actual service Smith provides to his customers.

 A further possibility for jurisdiction over the defendant is N.Y.C.P.L.R. § 302, New York's long arm statue. Any jurisdiction over Smith must be based on

§ 302(a)1, which provides ... "a court may excercise personal jurisdiction over any nondomiciliary ... who in person or through an agent transacts any business within the state." Whether or not a defendant "transacts business within the state" depends significantly on the facts of each case. *Rainbow Industries v. Haybuster Mfg., Inc.,* 419 F.Supp. 543 (1976). Some courts have interpreted section 302(a)1 as creating a two-step test for personal jurisdiction, requiring not only that defendant "transact business" in New York, but also that the cause of action "arise" from the in-state transaction. *Davis v. Costa-Gavras,* 595 F.Supp. 982 (1984); *Chemical Bank v. World Hockey Association,* 403 F.Supp. 1374 (1975).

Applying these principles, jurisdiction over Smith in New York courts is still inappropriate. Smith does not "transact business" in this state, nor does it have a formal agent transacting business on its behalf. In addition, the entire cause of action did not "arise" in New York, but rather involves Louisiana laws, citizens, corporations and concerns.

This case is dismissed for lack of personal jurisdiction and the Court need not consider defendant's motion on *forum non conveniens.*