LABORERS LOCAL 17 HEALTH AND BENEFIT FUND, and the Transport Workers Union New York City Private Bus Lines Health Benefit Trust, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PHILIP MORRIS, INC.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Bat Industries P.L.C.; Lorillard Tobacco Company, Inc.; Liggett & Myers Inc.; the American Tobacco Company; United States Tobacco Company; the Council for Tobacco Research—U.S.A., Inc.; the Tobacco Institute, Inc.; Smokeless Tobacco Council, Inc.; Hill & Knowlton, Inc., Defendants.

UNITED FEDERATION OF TEACHERS WELFARE FUND; Communication Workers of America Local 1180 Security Benefits Fund; International Union of Operating Engineers, Local 891 Welfare Fund; Social Service Employees Union Local 371 Welfare Fund, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PHILIP MORRIS, INC.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Bat Industries P.L.C.; Lorillard Tobacco Company, Inc.; Liggett & Myers Inc.; the American Tobacco Company; United States Tobacco Company; the Council for Tobacco Research—U.S.A., Inc.; the Tobacco Institute, Inc.; Smokeless Tobacco Council, Inc.; Hill & Knowlton, Inc., Defendants.

Nos. 97 Civ. 4550(SAS), 97 Civ. 4676(SAS).

United States District Court,
S.D. New York.

Aug. 27, 1998.

Melvyn I. Weiss, David J. Bershad, Michael C. Spencer, Kenneth J. Vianale, Beth A. Kaswan, Joan T. Brown, Milberg Weiss Bershad Hynes & Lerach, LLP., One Pennsylvania Plaza, New York City, for Plaintiffs.

Mark G. Cunha, Jacob S. Pultman, Ronald M. Neuman, Simpson Thacher & Bartlett, New York City, for Defendants.

## *OPINION AND ORDER*

SCHEINDLIN, District Judge.

### I. Introduction

In June of 1997, plaintiffs, consisting of several employee benefit trust funds ("the Funds"), filed these parallel class-action lawsuits to seek relief for purported fraud and other tortious conduct by several domestic cigarette manufacturers and related defendants.[1] B.A.T. Industries p.l.c. ("BAT Industries") is one of the defendants named in the Complaint, along with one of BAT Industries' subsidiaries, Brown & Williamson Tobacco Corporation ("B & W").

The case revolves around the central allegation that for several decades, defendants concealed crucial information concerning the dangers of cigarette smoking and other kinds of exposure to tobacco products. *See* Class Action Complaint and Demand for Jury Trial at ¶ 7, *Laborers Local 27 Health & Benefit Fund et al. v. Philip Morris. Inc. et al.*, No. 97 Civ. 4550 (S.D.N.Y. filed June 19, 1997) [hereinafter "Compl."] at ¶¶ 1–8.

Plaintiffs claim that as a result of this widespread industry deceit, they and other funds have spent millions of dollars more than they otherwise would have paid to provide medical benefits to fund beneficiaries. *See id.* The Funds have brought this action "to recover money expended ... to provide medical treatment to their participants and beneficiaries who have suffered and are suffering from tobacco-related illnesses and to obtain appropriate injunctive relief." *Id.* at ¶ 7.

Presently before the Court is defendant BAT Industries' motion to dismiss the Complaint for lack of personal jurisdiction. For the reasons set forth below, this motion is granted with leave to amend.[2]

---

1. The claims encompass both common law torts, including fraud, and assert violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

2. There have been many decisions around the country on BAT Industries' motions to dismiss similar claims for lack of in personam jurisdiction. An overwhelming majority of courts have determined that the exercise of personal jurisdiction over BAT Industries is not justified. These decisions are: (1) *Arch v. American Tobacco Co.*, 984 F.Supp. 830 (E.D.Pa.1997); (2) *State of Arizona v. American Tobacco Co.*, No. CV–96–14769 (Maricopa Co.Super. Ct. Apr. 15, 1998); (3) *State of California v.. Philip Morris, Inc.*, No. 980864 (Cal.Super.Ct. Sept. 17, 1997); (4) *Dunn v. RJR Nabisco Holdings Corp.*, No. 18D01–9305–CT–06 (Ind.Super.Ct. Oct. 10, 1997); (5) *Falise v. American Tobacco Co.*, No. 97 Civ. 7640, 1998 WL 372401, (E.D.N.Y. July 2, 1998); (6) *State of Florida v. American Tobacco Co.*, No. CL 95–1466 (Palm Beach Co. Cir. Ct. Sept. 16, 1996), *aff'd*, 707 So.2d 851, 707 So.2d 851 (Fla.App. 4th Dist. 1998); (7) *Small v. Lorillard Tobacco Co.*, 176 Misc.2d 413, 672 N.Y.S.2d 601 (Sup.Ct.N.Y. 1997), *rev'd on other grounds*, 1998 slip op. 07112, 07113, 1998 WL 398176 (1st Dep't July 16, 1998); (8) *State of Idaho v. Philip Morris, Inc.*, No. CV–OC–97–03239 *D (Idaho Dist. Ct. Ada Co. July 31, 1998); (9) *State of Illinois v. Philip Morris, Inc.*, No. 96 L 13146 (Cook Co. Cir. Ct. May 28, 1998); (10) *State of Indiana v. Philip Morris, Inc.*, No. 49D07–9702–CT–000236 (Marion Co.Super. Ct. June 11, 1998); (11) *Lyons v. American Tobacco Co.*, No. 96–0881–BH–S, 1997 WL 809677, (S.D.Ala. Oct.1, 1997); (12) *Commonwealth of Massachusetts v. Philip Morris, Inc.*, Civ. No. 95–7378–J (Middlesex Co.

## II. Factual Background

BAT Industries is a holding company incorporated under the law of England and Wales and based in London, England. *See* Affidavit of Peter L. Clarke, BAT Industries Company Secretary, dated April 9, 1998 ("Clarke Aff.") at ¶ 2. BAT Industries presently has more than 500 subsidiaries, most of which are in the financial services and tobacco businesses. *See id.* at ¶ 8. BAT Industries is neither licensed nor qualified to conduct business in New York and does not do business within New York. *See id.* at ¶ 11. In addition, BAT Industries has no offices, places of business, mailing addresses, bank accounts or telephone listings in New York. *See id.* at ¶¶ 14, 16. BAT Industries pays no taxes in New York, does not contract to supply goods and services in New York, nor does it own, use or possess real or personal property in New York. *See id.* at ¶¶ 13, 15, 17. BAT Industries is not presently nor has it ever been a member of the tobacco industry research groups or industry associations named in plaintiffs' Complaint. *See id.* at ¶ 18. Finally, BAT Industries has never manufactured, marketed, packaged, sold, distributed, or advertised any tobacco products in New York, or anywhere else. *See id.* at ¶ 4.

Super. Ct. Mar. 20, 1998); (13) *State of Minnesota v. Philip Morris Inc.*, No. C1–94–8565 (Ramsey Co. Cir. Ct. Feb. 2, 1998); (14) *State of Nevada v. Philip Morris, Inc.*, No. 9700306 (2nd Jud. Ct., Washoe Cp. Apr. 7, 1998); (15) *Northwest Laborers–Employers Health & Security Trust Fund v. Philip Morris, Inc.*, No. C97–849WD (W.D.Wash. May 13, 1998); (16) *State of Oklahoma v. R.J. Reynolds Tobacco Co.*, No. CJ–96–1499 (Cleveland Co. Dist. Ct. Dec. 8, 1997); (17) *State of Oregon v. American Tobacco Co.*, No. 9706–04457 (Or.Cir.Ct. July 24, 1998); (18) *State of Texas v. American Tobacco Co.*, 14 F.Supp.2d 956 (E.D.Tex. Dec.9, 1997); (19) *Perez v. Brown & Williamson Tobacco Corp.*, Civ. No. C–97–070 (S.D.Tex. Mar. 7, 1997); (20) *City and County of San Francisco v. Philip Morris*, No. C–96–2090, 1998 WL 230980, 1998 U.S. Dist. LEXIS 3056 (N.D.Cal. Mar. 3, 1998); (21) *Selcer v. R.J. Reynolds Tobacco Co.*, No CV–S–97–334–PMP (D.Nev. Aug. 6, 1998); (22) *Smith v. Brown & Williamson Tobacco Corp.*, No. 96–0459–CV–W–3, 1996 WL 751399 (W.D.Mo. Dec.23, 1996); (23) *State of Washington v. American Tobacco Co.*, No. 96–2–15056–8 (King Co. Super Ct. June 9, 1998). Of

On July 23, 1976, BAT Industries became a holding company for hundreds of subsidiaries, including co-defendant B & W and non-party British–American Tobacco Company Limited ("BATCo").[3] *See id.* Prior to this date, BAT Industries was an investment company named Tobacco Securities Trust Company Limited ("TST"). *See id.* As part of what is known in the United Kingdom as a "Scheme of Arrangement," on July 23, 1976, TST became the sole ordinary shareholder of BATCo. *See id.* at ¶ 5. TST then changed its name to BAT Industries Limited, and later to BAT Industries p.l.c., the present defendant. *See id.* B & W, BATCo and BAT Industries p.l.c. have been and remain separate corporate entities. *See id.* at ¶ 6; Reply Affidavit of Peter L. Clarke ("Clarke Reply Aff."), dated May 25, 1998, at ¶ 9.

## III. Discussion

Upon motion, the Court is obligated to dismiss actions against defendants over whom it has no in personam jurisdiction. *See* Fed.R.Civ.P 12(b)(2). A plaintiff bears the ultimate burden of showing by a preponderance of the evidence that jurisdiction over a defendant is proper. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). However, when a defendant brings a Rule 12(b)(2) motion prior to discovery, a plaintiff is only required to make out a

these twenty-three decisions, sixteen, including seven federal district court opinions, eight state trial court opinions and one state court of appeals opinion, have granted BAT Industries' Motion to Dismiss for Lack of Personal Jurisdiction. Included in this array of opinions are the two most recent decisions granting BAT Industries' motions. Of the seven opinions that denied BAT Industries' motion to dismiss, five were state court opinions and two were federal district court opinions. One of these district court opinions was subsequently withdrawn. The other district court opinion, from the Eastern District of New York, held that the jurisdictional issue was not ripe for decision pending further discovery or possible state appellate decisions. Of the remaining five state court opinions, two have since granted BAT Industries' motions and one was reversed on grounds other than for lack of personal jurisdiction.

3. Prior to July 23, 1976, BATCo was the parent company of B & W and it remained a parent of B & W until 1979 when it became a sister company to B & W. *See* Clarke Aff. at ¶ 4.

prima facie case of jurisdiction through the pleadings and affidavits. *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.1990); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Kinetic Instruments, Inc. v. Lares,* 802 F.Supp. 976, 981 (S.D.N.Y.1992) (when jurisdiction challenged prior to discovery, plaintiff may defeat the motion by good faith pleading of legally sufficient allegations). Such pleadings and affidavits are to be construed in the light most favorable to plaintiffs with all doubts resolved in plaintiffs' favor. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985).

■ BAT Industries does not reside nor was it served in New York. However, a federal court can assert jurisdiction over a nonresident defendant under the long-arm statute of the state in which it sits, provided that doing so comports with due process. *See United States v. Montreal Trust Co.,* 358 F.2d 239, 240 (2d Cir.1966); *see also Hoffritz,* 763 F.2d at 57 ("Personal jurisdiction over a defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits."); *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 179 (S.D.N.Y.1995) (personal jurisdiction in federal question action depends on state law of jurisdiction).

## A. Due Process Requirements

Due process requirements prevent a court from exercising personal jurisdiction over a defendant unless the defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). These "minimum contacts" must rise to a level such that the defendant should reasonably anticipate being haled into court in the forum state. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

### 1. Minimum Contacts

■ To establish minimum contacts necessary to justify "specific" jurisdiction over BAT Industries, the plaintiffs first must show that their claims arise out of or relate to BAT Industries' contacts with New York. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Plaintiffs must also show that BAT Industries "purposefully availed" itself of the privilege of doing business in New York and that it could foresee being "haled into court" there. *See Woodson,* 444 U.S. at 297, 100 S.Ct. 559; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). As the facts alleged in the Complaint and drawn from the Clarke Affidavit make clear, BAT Industries simply does not have minimum contacts with New York. Plaintiffs' failure to controvert Clarke's sworn testimony precludes the exercise of jurisdiction over BAT Industries.

### 2. Reasonableness

■ Even if a defendant has "minimum contacts" with the state, a court also must consider whether the assertion of jurisdiction "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of a particular case." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996) (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154). Whether it is "reasonable" to exercise jurisdiction in a particular case depends on

(1) the burden that the exercise of the jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metropolitan Life,* 84 F.3d at 568 (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), and *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174).

When faced with the decision whether or not to exercise jurisdiction over a foreign defendant, unique concerns come into play. *See Asahi Metal Indus. Co.,* 480 U.S. at 112–14, 107 S.Ct. 1026. A court must make "a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case" to be tempered by "an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 115, 107 S.Ct. 1026.

■ All of BAT Industries' officers, records and employees are located in the United Kingdom. *See* Clark Aff. at ¶ 16. Furthermore, plaintiffs have not explained why BAT Industries is a necessary party to this lawsuit where the actual tobacco manufacturers are before the Court. For these reasons, even if BAT Industries had minimum contacts with the State of New York, as the Complaint is currently drawn, the exercise of jurisdiction over BAT Industries would not comport with traditional notions of fair play and substantial justice.

**B.** *New York's Long–Arm Statute, CPLR § 302(a)*

Plaintiffs argue that "jurisdiction over B.A.T. exists under each prong of CPLR § 302(a) as a result of B.A.T.'s own actions …" Plaintiffs' Memorandum of Law in Opposition to Defendant B.A.T. Industries P.L.C.'s Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, ("Pls.' Mem.") at 10. However, while plaintiffs discuss briefly § 302(a)(2),[4] they make only conclusory arguments regarding the other prongs of § 302.[5]

**1.** *Section 302(a)(1)*

■ The first prong of New York's long-arm statute, Section 302(a)(1) provides that "[a] court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent … transacts any busi-

ness within the state...." The application of this section is a "two-step test … requiring not only that defendant 'transact business' in New York, but also that the cause of action 'arise' from the in-state transaction." *Central Gulf Lines, Inc. v. Cooper/T. Smith, Stevedoring,* 664 F.Supp. 127, 131 (S.D.N.Y. 1987). The second step requires that "there … be a 'substantial relationship' between [in-state] activities and the transaction out of which the cause of action arose." *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.,* 685 F.Supp. 346, 352 (S.D.N.Y.1988) (quoting *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (1981)).

BAT Industries has not transacted sufficient business in New York to satisfy this prong of the statute. *See* Clarke Aff. at ¶¶ 3, 9, 11. Nor has BAT Industries transacted business "through an agent". *See id.* at ¶¶ 9, 11. Plaintiffs neither allege facts nor proffer any evidence that would justify the exercise of in personam jurisdiction over BAT Industries under this section of the statute. Even if plaintiffs offered evidence of BAT Industries' business transactions in New York either on its own or through an agent, plaintiffs have failed to make any showing that the causes of action arise from these transactions or that there is a substantial relationship between the transactions and plaintiffs' claims. Therefore, there is no jurisdiction over BAT Industries under § 302(a)(1).

**2.** *Section 302(a)(2)*

Plaintiffs have not alleged any "tortious act" of BAT Industries committed within the state of New York that would subject BAT Industries to jurisdiction under Section 302(a)(2). They have failed to allege that their causes of action "arise" from a tortious act of BAT Industries. Consequently, there is no direct jurisdiction over BAT Industries

---

**4.** See discussion on the conspiracy theory of jurisdiction, *infra.*

**5.** In opposing BAT Industries' motion, plaintiffs fail to point the Court to specific facts and offer very brief legal arguments. Rather, plaintiffs

refer the Court to the Sur–Reply Memorandum of Law submitted by the plaintiffs in *Commonwealth of Massachusetes v. Philip Morris Inc.* (the "Massachusetes Action"), and to the court's decision in that case. *See* Pls.' Mem. at 11.

under this prong of New York's long-arm statute.[6]

### 3. *Section 302(a)(3)*

In relevant part, Section 302(a)(3) permits the exercise of jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state" and "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3).

■ Plaintiffs appear to allege that BAT Industries' involvement with the Tobacco Strategy Review Team ("TSRT") resulted in economic injuries in New York. *See* Pls.' Mem. at 4. They cite to TSRT minutes produced in the Massachusetts Action that they claim reveal BAT Industries' control over TSRT meetings. *See id.*

First, it is unclear from these documents what exactly BAT Industries' role was in these meetings. *See* Pls.' Mem., Exs. 90–100. Second, it is undisputed that BAT Industries does not sell, manufacture, or market cigarettes; rather, it is B & W that plays all of these roles. Therefore, in order to sustain jurisdiction under this prong of the statute, plaintiffs must demonstrate that the corporate veil should be pierced so that the contacts of B & W can be imputed to BAT Industries.[7]

■ Finally, plaintiffs have not satisfied the constitutional requirements for "foreign acts with forum effects" jurisdiction set forth in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). This type of jurisdiction requires both that the alleged conduct is "expressly aimed" at the forum state and that the "brunt" of the harm is felt in the forum state. *See id.* at 788, 104 S.Ct.

1482; *Chaiken v. VV Publishing Corp.,* 119 F.3d 1018, 1027–29 (2d Cir.1997) (no jurisdiction in Massachusetts because defendant did not expressly aim its actions at Massachusetts and had no reason to think that the brunt of the harm would be felt there). Plaintiffs have failed to show that either of these requirements has been satisfied with respect to BAT Industries' conduct and New York state. None of the jurisdictional documents to which they cite connect the actions of BAT Industries at the TSRT meetings to New York. Consequently, there is no jurisdiction over BAT Industries under § 302(a)(3).

### 4. *Section 302(a)(4)*

This section of the statute is inapplicable as BAT Industries does not own, use or possess any property in New York state. *See* Clarke Aff. at ¶ 17.

### C. *Jurisdiction Under RICO*

■ Plaintiffs also argue that the RICO statutes confer jurisdiction over BAT Industries. *See* Pls.' Mem. at 8. They contend that RICO authorizes nationwide service of process and that the relevant inquiry, therefore, is whether defendants have minimum contacts with the United States. *See id.* However, "[d]espite the broad scope of service permissible under § 1965(d), it has been construed not to provide for international service." *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 1279, 1285 (S.D.N.Y.1989); *Gap, Inc. v. Stone Int'l Trading, Inc.,* 93 Civ. 0638, 1994 WL 670020, at *6 (S.D.N.Y. Nov. 30, 1994) (" 'While section 1965(d) has been construed to authorize nationwide service of process, it has been judicially established that it does not provide for international service.' ") (quoting *Shaw v. Rolex Watch U.S.A., Inc.,* 745 F.Supp. 982, 987 (S.D.N.Y.1990)); *Soltex Polymer Corp. v. Fortex Indus., Inc.,* 590 F.Supp. 1453, 1460 (E.D.N.Y.1984) ("Although RICO authorizes nationwide service of process, . . . it does not,

---

6. For a discussion of jurisdiction over BAT Industries under this section of this statute based on alleged acts of co-conspirators, see section on conspiracy theory of jurisdiction, *infra.*

7. *See* Alter–Ego analysis, *infra.*

by its very language, authorize service in a foreign country").

■ Because effective service is a prerequisite to the exercise of personal jurisdiction, a foreign party against whom a RICO claim is asserted must be served with process in this country. *See Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 564 (S.D.N.Y.1985).[8] The plaintiffs have not served BAT Industries here;[9] hence the Court cannot exercise personal jurisdiction over BAT Industries under RICO.

■ Plaintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit. *See Stauffacher v. Bennett*, 969 F.2d 455, 460–61 (7th Cir.1992). The Court must focus on BAT Industries' contacts with New York, not the United States. As already discussed, the Court lacks personal jurisdiction over BAT Industries under CPLR § 302(a). Therefore, RICO does not confer personal jurisdiction over BAT Industries.

### D. *Conspiracy Theory of Jurisdiction*

Plaintiffs alternatively rely on an agency theory based on an alleged conspiracy between BAT Industries and other named defendants. This conspiracy is neither defined nor explained in their memorandum of law. Rather, plaintiffs make a bald claim that "there can be little doubt that the acts of B.A.T.'s co-conspirators are properly imput-

ed to B.A.T. for jurisdictional purposes." Pls.' Mem. at 11.

### 1. *Standard and New York Cases*

■ Courts have indeed defined "agent" as used in CPLR § 302(a)(2) broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators. *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122–23 (2d Cir.1981); *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 92–94 (2d Cir.1975). Pursuant to this theory, both state and federal courts in New York have found that where a plaintiff has presented a sufficient showing that a conspiracy exists, personal jurisdiction may exist over a defendant based on acts that were committed by his co-conspirators. *See Andre Emmerich Gallery, Inc. v. Segre*, No. 96 Civ. 889, 1997 WL 672009, at *6 (S.D.N.Y. Oct. 29, 1997); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F.Supp. 215, 223 (S.D.N.Y.1992); *Travelers Indem. Co. v. Inoue*, 111 A.D.2d 686, 490 N.Y.S.2d 506, 507 (1st Dep't 1985).[10]

Before jurisdiction based on a conspiracy can be upheld under New York law, however, the plaintiff must allege both a prima facie case of conspiracy and "allege specific facts warranting the inference that the defendants were members of the conspiracy and set forth evidentiary facts to connect the defendants with transactions occurring in the United States." *Allstate Life Ins.*, 782

---

8. Some courts have exercised personal jurisdiction over a foreign defendant in a RICO action where the defendant is served outside the United States, provided that such exercise of jurisdiction satisfies both federal due process requirements and the forum state's jurisdictional requirements. *See Madanes v. Madanes*, 981 F.Supp. 241, 260–61 (S.D.N.Y.1997); *Biofeedtrac, Inc. v. Kolinor Optical Enters., & Consultants, S.R.L.*, 817 F.Supp. 326, 332 (E.D.N.Y.1993); *Herbstein v. Bruetman*, 768 F.Supp. 79, 81–2 (S.D.N.Y.1991). These courts analyzed defendants' contacts with the United States as a whole. Even if the Court were to adopt such a rule, however, personal jurisdiction would be lacking here as plaintiffs have failed to allege sufficient contacts between BAT Industries and the United States, and, as discussed above, plaintiffs have failed to establish a prima facie case of jurisdiction over BAT Industries under New York law.

9. The papers indicate that BAT Industries was served in England, and neither party appears to contest this fact.

10. Courts in other jurisdictions that do not recognize conspiracy as a basis for personal jurisdiction have declined to uphold jurisdiction over BAT Industries. *See e.g., City and County of San Francisco v. Philip Morris*, No. C–96–2090, 1998 U.S. Dist. LEXIS 3065, at *28 (N.D.Cal. Mar. 3, 1998) (stating that "both California courts and federal courts in this circuit reject conspiracy as a basis for acquiring jurisdiction over a foreign defendant"). There is significant support in the New York case law, however, for the exercise of jurisdiction based on conspiracy. For this reason, if presented with sufficient evidence of BAT Industries' involvement in a conspiracy, this court may reach a different result than the vast majority of courts that have addressed BAT Industries' motions to dismiss on jurisdictional grounds.

F.Supp. at 222; *see also Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. 1260, 1268–69 (S.D.N.Y.1991); *Singer v. Bell*, 585 F.Supp. 300, 303 (S.D.N.Y.1984). In other words, "the bland assertion of conspiracy . . . is insufficient to establish personal jurisdiction." *Lehigh*, 527 F.2d at 93–4.

Under New York law, conspiracy itself is not a tort, but " 'merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act' " committed by a co-conspirator. *Grove Press*, 649 F.2d at 123 (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir.1956)). To establish a prima facie case for conspiracy under New York law, a plaintiff must allege the primary tort and the following four elements: (1) a corrupt agreement between two or more persons, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage or injury. *See Chrysler Capital Corp.*, 778 F.Supp. at 1267 (citing *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir.1986)).

Furthermore, though § 302(a)(2) does not require a formal agency relationship before long-arm jurisdiction can be exercised over an out-of-state co-conspirator, plaintiffs must show a relationship between the defendant and the conspiracy by showing: (1) that the out-of-state co-conspirator had an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators. *See Chrysler Capital Corp.*, 778 F.Supp. at 1269 (citing *Dixon v. Mack*, 507 F.Supp. 345, 350 (S.D.N.Y.1980)); *see also Grove Press*, 649 F.2d at 122 (alleged agent must act in New York "for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal").

One New York state court has relied upon this conspiracy theory as the basis for rejecting a motion to dismiss by BAT Industries for lack of personal jurisdiction over the defendant in New York. *See Small v. Lorillard Tobacco Co., Inc.*, 176 Misc.2d 413, 672 N.Y.S.2d 601 (Sup.Ct.N.Y.Co.1997), *rev'd on other grounds*, 677 N.Y.S.2d 515, 1998 slip op. 07112, 07113, 1998 WL 398176, at *11 (1st Dep't July 16, 1998). In so holding, the court in *Small* relied upon numerous exhibits submitted by plaintiffs, which the court found contained sufficient evidence to demonstrate the existence of a conspiracy to deceive the public about the addictive nature of nicotine and BAT Industries' participation in such conspiracy. The First Department subsequently reversed *Small* on other grounds, but it stated in dicta that it approved of the *Small* court's rejection of the motion to dismiss based on a conspiracy theory. *Small*, 1998 WL 398176, at *11.

One New York federal district court has also denied a motion to dismiss by BAT Industries. *See Falise v. American Tobacco Co.*, 97 Civ. 7640, 1998 WL 372401, at *1 (E.D.N.Y. July 2, 1998). In this brief opinion, Judge Jack B. Weinstein, although not elaborating on the specific theory under which he believed jurisdiction over BAT Industries could be found, cited approvingly to *Small* but refrained from deciding the jurisdictional issue pending further discovery or possible state appellate decisions. This opinion was issued prior to the First Department's approval, in dicta, of the lower court's dismissal of BAT Industries' motion to dismiss in *Small*.

Despite these holdings, BAT Industries' motion to dismiss for lack of personal jurisdiction must be granted, albeit with leave to replead. Upon careful examination of the Complaint, I find that plaintiffs' factual averments do not satisfy the requirements for pleading a conspiracy as a basis for obtaining jurisdiction over BAT Industries.

### 2. *Plaintiffs' Evidence of Conspiracy*

To survive a motion to dismiss, plaintiffs need only make a prima facie showing of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). In order to rely upon a conspiracy theory as its basis for jurisdiction, however, plaintiffs must allege all of the elements setting forth a prima facie case of conspiracy

and "allege specific facts warranting the inference that the defendants were members of the conspiracy." *Allstate,* 782 F.Supp. at 222.

### a. *Allegations in the Complaint*

In their Complaint, plaintiffs fail to allege *any* facts that support the inference that BAT Industries intentionally participated in any corrupt agreement to deceive the public about the dangers of smoking. According to the Complaint, the industry conspiracy to conceal information about smoking (around which plaintiffs' claims revolve) consisted of two strategies: "first, [defendants] agreed to represent falsely to the public that they were creating a new unbiased, and therefore trustworthy source to answer questions about smoking and health; second, they counted on the public's acceptance of their representations of such trustworthiness to misrepresent, suppress, distort and confuse facts about the health dangers of tobacco products, including nicotine addiction." Compl. at ¶ 57. The Complaint then details the creation of a "joint industry research organization in 1954" that marked the beginning of a "conspiracy to deceive the public regarding facts material to the decision to purchase and use tobacco products." *Id.* at ¶¶ 58–62.

A central event in the "conspiracy" took place, according to plaintiffs, in December of 1953, when the chief executive officers of the leading cigarette manufacturers met at the Plaza Hotel in New York City to develop a response to widespread adverse publicity about the link between smoking and cancer. *See id.* at ¶¶ 77–80. After this meeting, a research committee called the Tobacco Industry Research Committee ("TIRC") was formulated. *See id.* at ¶¶ 81–83. On January 4, 1954, the Tobacco Companies announced the formation and purpose of TIRC, with a newspaper advertisement called, "A Frank Statement to Cigarette Smokers." *See id.* at ¶ 87. Plaintiffs allege that following this publication, "the Tobacco Companies have repeatedly breached their assumed duty to report objective facts on smoking and health," *id.* at ¶ 91, and that throughout the 1960s, the tobacco companies knew about the

addictive qualities of nicotine and concealed their research. *See id.* at ¶¶ 141–150.

The problem with these allegations is that they all relate to activities that took place prior to 1976, when BAT Industries was established. *See* Clarke Aff. at ¶¶ 4, 24; Clarke Reply Aff. at ¶ 3. BAT Industries did not conduct research in the 1960s and 1970s, *see* Clarke Aff. at ¶ 23, had never been a member of TIRC, *see id.* at ¶ 18, did not participate in the 1953 meeting at the Plaza Hotel, *see id.* at ¶ 19, and was not a signatory to the 1954 newspaper advertisement. *See id.* at ¶ 20. Furthermore, BAT Industries was never a party to an alleged "gentlemen's agreement" amongst tobacco manufacturers to refrain from conducting research, *see id.* at ¶ 21, did not undertake scientific research projects, *see* Clarke Reply Aff. at ¶ 12, and no representative of BAT Industries testified before Congress in 1994. *See* Clarke Aff. at ¶ 22, citing Compl. at ¶ 50.

According to BAT Industries' company secretary, Peter Clarke, plaintiffs' pre–1976 allegations most likely refer to the activities of another organization, non-party BATCo. *See* Clarke Aff. at ¶¶ 23–25; Clarke Reply Aff. at ¶¶ 3, 5. Therefore, in order to hold BAT Industries liable for any pre–1976 actions, plaintiffs must argue that BAT Industries was BATCo's successor. Plaintiffs have not made this argument. As a result, BATCo's actions cannot be imputed to BAT Industries for jurisdictional purposes.

Plaintiffs also suggest that BAT Industries was a member of the industry-wide conspiracy through its interactions with its subsidiary, Brown & Williamson. To this end, they allege that Brown & Williamson caused certain research documents to be stamped as "deadwood" and sent to BAT Industries in order to avoid their production in litigation. Compl. at ¶ 121–22. This allegation, however, does not support a finding that BAT Industries participated in any conspiracy, as plaintiffs do not set forth any facts indicating that BAT Industries was in any way a party to this alleged scheme to conceal potentially incriminating evidence.

In one of the few specific references to BAT Industries in the Complaint, plain-

tiffs also allege that BAT Industries conducted "significant research for Brown & Williamson on the topics of smoking, disease and addiction." Compl. at ¶ 18. Plaintiffs do not, however, allege how, even if this fact were accepted as true, it could support a finding that BAT Industries was involved in any corrupt agreement to deceive the public.

Plaintiffs neither allege facts sufficient to establish a prima facie case of conspiracy nor attempt to show a relationship between BAT Industries and this alleged conspiracy. Because the Complaint lacks a clear, well-defined explanation of BAT Industries' role in the alleged conspiracy and lacks any references to specific connections between BAT Industries and the conspiracy in New York, the exercise of jurisdiction would necessarily fail to meet the constitutional requirements for the exercise of personal jurisdiction.

#### b. *Extrinsic Proof*

In their memorandum of law, plaintiffs set forth some additional allegations—and they have submitted exhibits that they contend support these allegations—that *may* suggest that BAT Industries participated in activities designed to deceive the public about smoking. For example, plaintiffs state that BAT Industries' Chairman supervised and directed research for certain projects to manipulate nicotine levels in cigarettes and "ordered an acceleration of the project's development and marketing in the United States." Pls.' Mem. at 5. These claims, however, are not alleged in the Complaint.

■ On considering a motion to dismiss for lack of personal jurisdiction, a court may consider extrinsic evidence submitted by the parties. *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 178 n. 2 (S.D.N.Y. 1995). The purpose of the court's examination of these extrinsic materials is to determine whether there is any factual support for the plaintiff's prima facie case of jurisdiction. Extrinsic materials, however, cannot be used to amend pleadings that are themselves insufficient. *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 177 (2d Cir.1998) (finding

that a party cannot amend its Complaint through statements in its briefs).

#### 3. *Leave to Amend*

■ Failing to set forth any factual allegations in their Complaint linking BAT Industries to any illicit conspiracy, plaintiffs have not satisfied their prima facie burden of showing that jurisdiction exists over the defendant. Because, however, plaintiffs suggest in their memorandum of law that they are aware of additional facts linking BAT Industries to the alleged conspiracy, they may file an Amended Complaint that pleads these facts.

#### E. *Alter–Ego Theory of Jurisdiction*

Plaintiffs do not develop a veil-piercing argument, but rather imply that BAT Industries is responsible for the actions of B & W. *See* Compl. at ¶ 17. The allegations that "[t]hrough Brown & Williamson, BAT Industries has placed cigarettes into the stream of commerce, ... [and that] BAT Industries has also conducted, by itself or through its agents, subsidiaries, associated companies, or co-conspirators, significant research for Brown & Williamson," *id.,* warrant a discussion of whether plaintiffs can pierce the corporate veil for the purpose of establishing jurisdiction over BAT Industries.[11]

■ Mere ownership by a parent company of a subsidiary that is subject to personal jurisdiction is insufficient to establish jurisdiction over the parent. *See Delagi v. Volkswagenwerk AG,* 29 N.Y.2d 426, 328 N.Y.S.2d 653, 657, 278 N.E.2d 895 (1972); *Sone v. Tsumura,* 222 A.D.2d 231, 634 N.Y.S.2d 689, 691 (1st Dep't 1995) ("[n]or is there any basis for claims against [the parent company,] as plaintiff has merely demonstrated that a parent-subsidiary relationship exists"); *Porter v. LSB Indus., Inc.,* 192 A.D.2d 205, 600 N.Y.S.2d 867, 872 (4th Dep't 1993) ("A finding of agency for jurisdictional purposes will not be inferred from the mere existence of a parent-subsidiary relationship").

---

11. BAT Industries has invoked New York law regarding the test for its alter-ego analysis, and plaintiffs have not contested this choice. For this reason, this Court need not undertake a choice of law analysis. *See Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459 (2d Cir.1998).

■ Piercing the corporate veil to establish personal jurisdiction over a foreign parent based on the activities of its subsidiary in a forum state is only appropriate when a parent's "control over the subsidiary's activities [is] so complete that the subsidiary is, in fact, merely a department of the parent." *Delagi*, 328 N.Y.S.2d at 657, 278 N.E.2d 895; *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 811, 623 N.E.2d 1157 (1993) ("[C]omplete domination of the corporation is the key to piercing the corporate veil"); *Pyramyd Stone Int'l Corp. v. Crosman Corp.*, 95 Civ. 6665, 1997 WL 66778, at *5 (S.D.N.Y. Feb. 18, 1997) ("Related corporations are presumed to be separate unless the parent corporation treats its subsidiary as a mere department."); *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. 727, 733 (S.D.N.Y.1986) ("In order to pierce the corporate veil, the parent corporation must dominate the finances, policies, and business practices of the subsidiary corporation to such an extent that the subsidiary has no separate corporate existence of its own.").

Recently, the Second Circuit reiterated the four factors that a court must consider in determining whether the subsidiary is a mere department of the parent: (1) common ownership, (2) financial dependency of the subsidiary on the parent, (3) the degree to which the parent is involved in the selection and assignment of the subsidiary's high-ranking personnel and fails to observe corporate formalities, and (4) the degree of control by the parent over the marketing and operational policies of the subsidiary. *See Jazini v. Nissan Motor Co. Ltd.*, 148 F.3d 181, 182 (2d Cir.1998) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120–22 (2d Cir.1984)).

■ As in *Jazini*, plaintiffs in this case have failed to allege facts and evidence sufficient to warrant the inference that B & W is a "mere department" of BAT Industries. In addition, the extensive analysis and affidavit of Professor Robert E. Stobaugh, a Professor Emeritus of the Harvard Business School, lends support to the conclusion that BAT Industries does not exercise undue control or domination over its subsidiaries. *See* Affidavit of Robert B. Stobaugh, dated August 29, 1997, ("Stobaugh Aff."), at ¶ 3. Because there is no evidence to support an alter-ego theory of jurisdiction, there is no basis for piercing the corporate veil.

## IV. Leave to Amend

Fed.R.Civ.P. 15(a) provides that the court should grant leave to amend "freely ... when justice so requires." The Second Circuit has noted that "[w]hen a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.' ... Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir.1991) (quotations omitted) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990)). Where the possibility exists that the defect can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant. *See Oliver Schools*, 930 F.2d at 253.

It is possible that plaintiffs could plead facts which might support a finding of jurisdiction over the defendant under a conspiracy theory. BAT Industries' motion to dismiss is granted with leave to amend the allegations that BAT Industries participated in a conspiracy that committed tortious acts in New York state.

## V. Conclusion

Plaintiffs have failed to establish a prima facie case of in personam jurisdiction over BAT Industries. Accordingly, BAT Industries' motion to dismiss the Complaint for lack of personal jurisdiction is granted with leave to amend in order to plead facts that could support a finding of jurisdiction under a conspiracy theory. Any amended Complaint must be served and filed no later than September 30, 1998.