PHOENIX MUTUAL LIFE
INSURANCE COMPANY,
Plaintiff,

v.

SEAFARERS OFFICERS & EMPLOY-
EES PENSION PLAN et ano.,
Defendants.

No. CV–87–4099.

United States District Court,
E.D. New York.

Sept. 29, 1989.

Townley & Updike, New York City, for plaintiff.

Robert H. Bugucki, P.C., New York City, for Seafarers.

Mudge Rose Guthrie Alexander & Ferdon, New York City and Arent Fox Kintner

Plotkin & Kahn, Washington, D.C., for El Paso Corp.

Moses & Singer, New York City, for Bankers Trust Co.

Hughes Hubbard & Reed, New York City, for Atlantic Richfield.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This litigation, involving a somewhat complicated set of financing arrangements relating to the 1982 purchase of two liquified natural gas tankers and an almost equally complex procedural history in this Court, is currently before the undersigned on dispositive cross-motions directed to a fourth-party action which is, as it will appear, at the heart of this case. Since the parties most immediately concerned are, however, undoubtedly less interested in the complexities with which they are fully familiar than with how those complexities are to be resolved, it is appropriate to start by noting that, for the reasons which follow, the application of the fourth-party plaintiff Bankers Trust Company ("Bankers Trust") for partial summary judgment on its first cause of action is granted, and the motion of the fourth-party defendant Atlantic Richfield Company ("ARCO") to dismiss the fourth-party complaint is denied.

### The Underlying Transactions

The following description of the underlying financial transactions that gave rise to this lawsuit is essentially undisputed. In February 1982, two companies, Phoenix Bulkship I, Inc. and Phoenix Bulkship II, Inc. (hereinafter referred to collectively as "Phoenix Bulkships"), purchased two liquified natural gas tankers (the "LNG Tankers") from subsidiaries of The El Paso Company ("El Paso"). In order to pay for the purchase, Phoenix Bulkships entered into a sale and lease back arrangement with ARCO with the hope that substantial tax benefits in the form of investment tax credits and depreciation allowances under the Internal Revenue Code would thereby be legally transferred from Phoenix Bulkships to ARCO under provisions of the tax law then in force permitting such transfers provided that the sale and lease back arrangements qualified as what are known as "safe harbor" leases under 26 U.S.C. § 168(f).

Under the terms of each sale and lease back, ARCO paid Phoenix Bulkships $6.5 million at the closing and agreed to make twenty-five installment payments each year over a period of twenty-five years, all but two of which payments (in the 5th and the 25th years) were offset by rental payments due and owing from Phoenix Bulkships to ARCO. It is the fifth of these installment payments, expected to be paid in May 1987, that has given rise to this litigation.

Given the uncertainties of life and particularly those relating to the interpretation of the Internal Revenue Code, the parties agreed that, in the event ARCO did not obtain the desired tax benefits that were at the heart of the transactions, Phoenix Bulkships would indemnify ARCO for its losses. Nor was ARCO satisfied with the naked promise of indemnification made by Phoenix Bulkships but sought in addition security in the form of letters of credit. These were obtained from Bankers Trust. Bankers Trust in turn sought security against losses that might occur as a result of payments under its letters of credits by providing that any payment by it pursuant to the letters of credit would be treated as a loan by Bankers Trust to Phoenix Bulkships and that ARCO's installment payments would be deposited in pledge accounts at Bankers Trust as security for monies owed to Bankers Trust by Phoenix Bulkships. Of particular note, the letters of credit provided that they would terminate if ARCO failed to make any installment payments "due under the leases." In addition, Bankers Trust obtained from the seller of the two tankers, El Paso, a guarantee that it would pay Bankers Trust any amount by which payments to ARCO pursuant to the letters of credit exceeded funds on deposit in the pledge accounts. El Paso in turn obtained a guarantee from a pension plan of the Seafarers Officers and Employees Union ("Seafarers") that it would pay El Paso for any amounts that El Paso was called upon to pay Bankers Trust

as a result of Bankers Trust's having to pay ARCO on a letter of credit pursuant to Phoenix Bulkships' agreement to indemnify ARCO for losses of anticipated tax benefits. Nor was El Paso satisfied with Seafarers' bare promise but sought and obtained security in the form of a claim of $6 million of Seafarers' funds in the hands of Phoenix Mutual Life Insurance Co., the depository of pension deposits of the Seafarers Union.

With all these loan and security arrangements in effect, at some time prior to the time when the fifth installment payment was due (a sum apparently in excess of $37 million) information came to the attention of ARCO which gave it concern that the tax benefits it anticipated from these transactions might not in fact be realized. As best as can be judged from the papers at this stage of the litigation, it appears that the two LNG Tankers were arrested by local authorities in Malaysa, acting apparently at the request of the United States Government, raising a host of questions under the tax laws as to whether the lease arrangements qualified as safe harbor leases.

Faced by these uncertainties, ARCO did not make the fifth payment. Nor, since it apparently lacked sufficient information (and still lacks it) to decide whether it will obtain the tax benefits it hoped for or not, did it demand indemnification for lost benefits from Phoenix Bulkships. Bankers Trust, waiting for $37 million to be paid into its pledge accounts, on August 3, 1987, notified ARCO of its delinquency and stated that if payment was not forthcoming within ten days Bankers Trust's obligations under its letters of credit would terminate.

ARCO protested but did not pay. Ten days later Bankers Trust announced that it considered its obligations under the letters of credit at an end.

Once Bankers Trust announced that it would no longer make payments pursuant to the letters of credit, El Paso took the position that its guarantee was at an end, and the Seafarers Union Pension Fund sought to have its deposits in the hands of Phoenix Mutual Life Insurance freed from securing Seafarers' guarantee of El Paso's guarantee. When Bankers Trust took the position that the guarantees remained in effect as long as the question of its obligations under the letters of credit was not resolved, this litigation started.

### Procedural History

The parties came to Court more or less in the reverse order of their contingent obligations. On December 9, 1987, Phoenix Mutual Life Insurance started the ball of litigation rolling by filing an action seeking interpleader and declaratory judgment against Seafarers and El Paso. Phoenix Mutual sought to determine whether Seafarers' guarantee of El Paso's obligations to Bankers Trust was still in effect and whether the $6 million in its hands should be held as security for obligations to El Paso or be made fully available to the Seafarers Union. Four months later in March 1988, El Paso commenced a third-party action against Bankers Trust seeking a declaratory judgment as to whether its guarantee of Phoenix Bulkships' obligations to Bankers Trust was still in effect. Later that same month, Bankers Trust brought in the balance of the interested parties by suing Phoenix Bulkships and ARCO for a declaration that its letters of credit were an end, enjoining ARCO from enforcing them, and damages from ARCO by reason of its failure to pay the fifth installment payment into the bank's hands.

In May 1988, ARCO, getting to the heart of the matter, moved this Court to dismiss Bankers Trust's actions against it on three grounds: (1) Bankers Trust's claims against it are non-justiciable essentially because its obligations to make the fifth installment payment could not be determined until the Internal Revenue Service decided whether ARCO was entitled to its anticipated tax benefits; (2) the IRS is an indispensable party in the resolution of Bankers Trust's claims which cannot be joined in this litigation; and (3) the third-party action is not one permitted under Rule 14 of the Federal Rules of Civil Procedure. Bankers Trust then cross-moved for partial summary judgment on its claims for a declaration

that it rightfully terminated its letters of credit.

## DISCUSSION

ARCO's argument that Bankers Trust's claims against it must be dismissed for lack of justiciability is premised on the theory that this Court cannot decide whether the letters of credit were properly terminated, can be drawn on, or whether there are damages from non-payment until the IRS rules on whether the sale and lease back arrangements between ARCO and Phoenix Bulkships obtained the tax benefits anticipated by the parties or not.

A justiciable controversy is one "between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972).

■ Bankers Trust's claims are not dependent on future decisions by the IRS but rather on a set of events that have already occurred. All its claims are premised on legal documents that have already been entered into and actions by both sides that have already taken place. ARCO has refused to make the payments called for by the lease agreements. Bankers Trust seeks to have this Court determine the legal consequences of this event. A declaration is not being sought on the legal consequences of some act that may or may not occur. *See Salomon Bros. Inc. v. Carey*, 556 F.Supp. 499, 501 (S.D.N.Y.1983); 10C Wright and Miller, *Federal Practice and Procedure* § 2757 (1973).

■ A trial court's decision to grant declaratory relief is discretionary. *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 505 (2d Cir.1968). The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecuri-ty, and controversy giving rise to a proceeding. *Salomon Bros. Inc., supra,* at 502; *see also Maryland Casualty Company v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971). In this case, Bankers Trust has demonstrated that both of these criteria will be satisfied by a declaratory judgment. A decision as to whether a breach of contract has occurred affects the legal status of the letters of credit. The guarantee, which is the subject of the third-party action asserted by El Paso, is dependent upon the legal status of the letters of credit, and the main action involving funds being held by Phoenix Mutual pursuant to Seafarers' guarantee is in turn dependent upon the enforceability of the guarantee. Clearly, a declaratory judgment will alleviate the uncertainty surrounding the legal meaning of the factual circumstances that have already occurred.

What ARCO's argument overlooks is that its entitlement to monies from Phoenix Bulkships by reason of some future determination by the IRS that ARCO is not entitled to the tax benefits the parties anticipated transferring is separate and distinct from the question of whether Bankers Trust's letters of credit will be available to secure Phoenix Bulkships' future obligations, if any. That latter issue has, as noted *infra,* been determined by ARCO's self help in withholding the installment payments otherwise due. Since ARCO has taken this route, a determination of the issue as to whether the letters of credit will secure Phoenix Bulkships' obligations requires no future action by the IRS. On the contrary, as noted *infra,* ARCO has forfeited any right to security from Bankers Trust.

■ From what has been said, it is clear that the IRS is not an indispensable party in the determination of whether Bankers Trust's letters of credit must continue to serve as collateral for future obligations of Phoenix Bulkships that may or may not come into existence.

■ Ordinarily, a non-party to a contract is not a necessary party to the adjudication of rights under the contract. *Northrop Corp. v. McDonnell Douglas Corp.*, 705

F.2d 1030, 1044 (9th Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); *Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1108 (4th Cir. 1980). The inquiry contemplated by Rule 19 is a practical one, 7C Wright Miller & Kane, *Federal Practice and Procedure* § 1604 (1986), and is addressed to the discretion of the trial court. The circumstances of this case require a determination of whether there was a breach under the leases by ARCO and whether Bankers Trust took steps in response to ARCO's actions permitted under the letters of credit. Because the future possibility that the IRS might declare that the leases were disqualified from receiving safe harbor treatment does not affect the determination to be made in the fourth-party action, adjudication here in the absence of the Commissioner does not subject ARCO to the possibility of inconsistent adjudications. Nor will any issue affecting the revenue be decided by a determination that ARCO has forfeited its right to draw down the letters of credit by withholding the payment of the fifth installment.

■ ARCO's final argument that the particular procedural posture of this lawsuit somehow deprives Bankers Trust of the right to make its claims must also be rejected. The narrow interpretation of Rule 14 that ARCO urges would render it virtually unusable for purposes of bringing third-party actions in cases in which declaratory judgment or injunctions are sought. *Old Republic Ins. Co. v. Concast, Inc.,* 99 F.R.D. 566, 568 (S.D.N.Y.1983). Here, the essential purposes of Rule 14 are certainly served by permitting impleader. *See American Fidelity & Casualty Co. v. Greyhound Corp.,* 232 F.2d 89 (5th Cir. 1956). The common issues in the actions before this Court are so interrelated that it would be wastefully duplicative to require Bankers Trust to proceed against ARCO in a separate lawsuit. In substance, if El Paso succeeds in the third-party action in establishing that Bankers Trust cannot hold it responsible on its guarantee of Phoenix Bulkships' obligation to Bankers Trust, then Bankers Trust must seek to assure that ARCO not draw down on the letters of credit to cover obligations of Phoenix Bulkships to ARCO. It is no stretch of Rule 14 to say that the effort to declare how these obligations should be sorted out is a proper use of Rule 14 and well within its intent.

### Bankers Trust's Motion for Summary Judgment

■ As already noted, Bankers Trust's motion for summary judgment seeks simply a declaration that it is no longer liable on the letters of credit because the payments from ARCO into its pledge accounts which were to have secured the bank were never paid by ARCO. While ARCO seeks to raise disputed issues of fact as to the meaning of the letters of credit by pointing out that they refer to payments due under the lease, no reasonable finder of fact could conclude that it was the intention of the parties to incorporate into the letters of credit all the complexities of interpretation which ARCO says the lease agreements permit. ARCO has offered no arguable interpretation of the security arrangements that would permit it on one hand to engage in self help by withholding the fifth installment payment and at the same time to keep Bankers' Trust in the picture as a source of security in a situation in which Bankers Trust's agreement to offer its letters of credit was itself contingent on ARCO's payments standing as security for the bank.

For the reasons stated, Banker Trust's motion for summary judgment on its first cause of action is granted, and ARCO's motion is denied.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.