Galerie GMURZYNSKA, Plaintiff,

v.

Ingrid HUTTON, Leonard Hutton Galleries, Inc., Magdalena Dabrowski, Eugena Ordonez a/k/a Eugena Chu, Alexandra Shatskikh, and Bengt Schwitters, Defendants.

No. 01 Civ. 5002(RMB).

United States District Court, S.D. New York.

March 13, 2003.

Judd Burnstein, New York City, for plaintiff.

Daniel Weiner, Hughes, Hubbard & Reed, LLP, New York City, Jeremiah Gutman, Pollet & Felleman, New York City, for defendants.

### DECISION & ORDER

BERMAN, District Judge.

On or about April 30, 2001, plaintiff Galerie Gmurzynska ("Plaintiff" or "Galerie") filed a verified complaint ("Complaint" or "Compl.") against defendants Ingrid Hutton ("Hutton"), Leonard Hutton Galleries, Inc. ("Hutton Galleries"), Magdalena Dabrowski ("Dabrowski"), Eugena Ordonez a/k/a/ Eugena Chu ("Ordonez"), Alexandra Shatskikh ("Shatskikh"), and Bengt Schwitters ("Schwitters") (collectively, "Defendants") in New York State Supreme Court, New York County. Plaintiff alleged three causes of action against Defendants arising from an alleged scheme to destroy Plaintiff's reputation in the Russian Avant Garde art world, including: (i) violation of 15 U.S.C. § 1125(a)(1)(B), a provision of the Lanham Act;[1] (ii) tortious advantage. Plaintiff's Complaint incorrectly cites 11 U.S.C. § 1125, a bankruptcy statute.

---

1. 15 U.S.C. § 1125(a)(1)(B) prohibits the disparagement of a competitor's goods or services for purposes of gaining a competitive

interference with business expectancy; and (iii) defamation. Plaintiff also seeks a declaratory judgment.

On June 6, 2001, Ordonez removed the action to federal court on the ground, among others, that Plaintiff's action raises a federal question under 15 U.S.C. § 1125(a)(1)(B). June 6, 2001 Notice of Removal at 1 (because a "federal question is ... raised by plaintiffs ... [t]his Court has original jurisdiction thereof"). Plaintiff did not oppose removal.

On January 11, 2002, Schwitters filed a motion to dismiss Plaintiff's suit as to him for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Fed. R.Civ.P." or "Rule") 12(b)(2) ("Schwitters' Mem."), and included an affidavit dated January 10, 2002 ("Schwitters' Aff."). On March 4, 2002, Plaintiff filed a memorandum of law in opposition ("Pl. Opp. to Schwitters' Mem."). On March 25, 2002, Schwitters filed a reply brief ("Schwitters' Reply").

On January 31, 2002, Defendants (other than Schwitters) filed a motion to dismiss the Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) ("Def.Mem."). On March 4, 2002, Plaintiff filed a brief in opposition ("Pl. Opp. to Def. Mem."). On March 18, 2002, Defendants filed a reply memorandum of law ("Def.Reply"). **For the reasons set forth below, Schwitters' Rule 12(b)(2) motion to dismiss and the remaining Defendants' Rule 12(b)(6) motion to dismiss are granted.**

## I. Background

The following allegations, which are set forth in the Complaint, are taken to be true for purposes of this motion. *See Friedlander v. Roberts,* 51 F.Supp.2d 385, 386 (S.D.N.Y.1999).

Plaintiff is an art gallery based in Cologne, Germany and is the "world's leading dealer of Russian Avant Garde art." Compl. ¶ 2. Hutton Galleries, a New York-based gallery, is Plaintiff's "main competitor." *Id.* ¶ 1. Plaintiff alleges that it is the target of "illicit efforts," orchestrated by Defendants, consisting of "false rumors and accusations that certain works of art it has sold or traded or still owns are not authentic." *Id.* ¶¶ 1–2. Plaintiff claims that "these rumors and accusations are part and parcel of a conspiracy ... to denigrate Galerie and monopolize both the international and New York market for Russian Avant Garde art." *Id.* ¶ 2.

Plaintiff alleges that Defendants devised two related "schemes" to destroy Plaintiff. *Id.* ¶¶ 3–4, 6. The first scheme allegedly involved false statements by art experts, specifically Defendants Dabrowski, Ordonez, and Shatskikh, (collectively, "Defendant Experts"), that "specific works of art offered for sale by Galerie ... are not genuine" and that "Hutton Galleries—not Galerie—is the only place the serious buyer should go to purchase Russian Avant Garde art." *Id.* ¶¶ 4, 6. Plaintiff alleges that Hutton and Hutton Galleries are "behind the [Defendant Experts'] false claims that Galerie is selling inauthentic works of art" because "any time Galerie is harmed by false claims that it sells inauthentic art, Hutton is necessarily assisted because it is Galerie's only major competitor in the New York market." *Id.* ¶¶ 3–4. Plaintiff also alleges, "on information and belief," that "these experts [are] beholden to Hutton financially" and that Hutton has "repeatedly used the same cast of unprincipled experts ... to do her bidding." *Id.* ¶ 4.

The second scheme allegedly involved a March 1998 exhibition of paintings by German artist Kurt Schwitters at the Sprengel

Museum ("Sprengel" or "Museum") in Hanover, Germany. *Id.* ¶ 7.[2] The exhibition, one-third of which was comprised of works acquired "through purchases or trades with Galerie," *id.* ¶ 8, required the assistance of the Schwitters family to be successful. *Id.* Defendant Bengt Schwitters allegedly used the exhibition as his "primary tool" to destroy Plaintiff by causing the Museum to publish an exhibition catalogue, which "falsely claimed in essence, that some of the works in the Schwitters Collection contained inauthentic works of art provided ... by Galerie" and "falsely suggested that Galerie had not been cooperative with the Sprengel Museum in connection with the Exhibit." *Id.* ¶¶ 9, 63–66.[3]

Plaintiff alleges that the "two strands of the conspiracy against Galerie—(a) Hutton and the [Defendant] Experts, and (b) Bengt Schwitters and the Museum—came together," *id.* ¶ 73, when Ordonez and Shatskikh, "at the behest of Hutton, offered their assistance to Sprengel in the wake of the scandal created by the first catalogue." *Id.* Thereafter, the Sprengel, allegedly at Schwitters' direction, published additional catalogues which, among other things, "continued to rely upon Shatskikh's and Ordonez's unprincipled analyses" and "permitted Bengt Schwitters to include a forward—written by Bengt and his mother—which viciously attacked Galerie." *Id.* ¶ 74. Plaintiff also alleges that Defendants enlisted an art journalist, Sylvia Hochfield, "to write a negative article about Galerie and its dispute with Sprengel. Toward this end, Bengt Schwitters authorized the Museum to provide all of its 'expert' analysis to Hochfield." *Id.* ¶ 75.

## II. Standard of Review

### A. Schwitters' Motion

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999). Where the parties have not commenced discovery, plaintiff need only assert "facts constituting a *prima facie* showing of personal jurisdiction" to defeat a motion to dismiss. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). "[A]ll pleadings and affidavits are construed in the light most favorable to plaintiff, and where doubts exist, they are resolved in the plaintiff's favor." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). However, "conclusory allegations are not enough to establish personal jurisdiction." *Marczeski v. Kamba*, 99 Civ. 02479, 2001 WL 237204, at *1 (D.Conn. Feb.23, 2001) (citing *Harris v. Wells*, 832 F.Supp. 31, 34 (D.Conn.1993)).

### B. Defendants' Motion

"In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). Dismissal of the complaint is proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "The issue is not wheth-

---

**2.** Defendant Bengt Schwitters is the grandson of the late Kurt Schwitters.

**3.** Plaintiff alleges that Defendant Bengt Schwitters sought to harm Plaintiff because of

Plaintiff's "close and cordial relationship" with Ernst Schwitters, Defendant Schwitters' father, against whom Defendant Schwitters harbored "great hostility." Compl. ¶ 7.

er a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 (2d Cir.1976) (per curiam)). However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeenne de Banque v. La Republica de Venezuela,* 700 F.Supp. 114, 122 (S.D.N.Y.1988).

## III. Analysis

### A. Schwitters' Motion

Schwitters, indisputably a Norwegian citizen and a resident of Germany, maintains that "[t]he Court's assumption of jurisdiction over [him] ... will violate the due process clause of the Fifth Amendment ... because [he] had no contacts with the forum state."[4] Schwitters' Mem. at 1. Schwitters asserts that Plaintiff, itself a German gallery, "complain[s] of acts allegedly occurring in Germany," Schwitters' Mem. at 2, which involve "a dispute among three German entities in Germany." Schwitters' Reply at 8.

Plaintiff argues that "personal jurisdiction over Schwitters is proper based not upon his own acts within the United States, but the local acts of his co-conspirators in furtherance of the conspiracy, as well as his own acts outside the forum with foreseeable effects in the forum." Pl. Opp. to Schwitters' Mem. at 1–2. Plaintiff contends that jurisdiction is appropriate under either Section 302(a)(2) of New York's long arm statute, New York Civil Practices Law and Review ("C.P.L.R."), or pursuant to Fed.R.Civ.P. 4(k)(2).[5]

Plaintiff fails to demonstrate that personal jurisdiction over Schwitters exists. Regardless of whether New York's long-arm statute or Rule 4(k)(2) is invoked, this Court can only exercise jurisdiction if doing so satisfies due process requirements.[6] *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 26 F.Supp.2d 593, 598 (S.D.N.Y.1998) ("[A] federal court can assert jurisdiction over a non-resident defendant under the long-arm statute of the state in which it sits, provided that doing so comports with due process."); *Eskofot v. E.I. Du Pont De Nemours,* 872 F.Supp. 81, 87 (S.D.N.Y.1995) (Fed.R.Civ.P. 4(k)(2) provides federal courts with personal jurisdiction over a foreign defendant "only if the foreign defendant has sufficient contacts with the United States to satisfy due process re-

---

4. In his affidavit, Schwitters denies any contacts with either the United States or New York, stating, among other things, "I have never done business in the United States. I never lived in the United States and have never been in the United States." Schwitters' Aff.

5. C.P.L.R. § 302(a)(2) provides, in relevant part, that a court may exercise "personal jurisdiction over any non-domiciliary ... who in person or through an agent ... commits a tortious act within the state." Fed.R.Civ.P. 4(k)(2) permits the exercise of jurisdiction "with respect to claims arising under federal law ... over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state."

6. Although the Fourteenth Amendment due process analysis applies where jurisdiction is exercised pursuant to C.P.L.R. § 302(a)(2) and the Fifth Amendment due process analysis applies where jurisdiction is exercised pursuant to Fed.R.Civ.P. 4(k)(2), the analyses are essentially the same. "The principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state can be considered." *Chew v. Dietrich,* 143 F.3d 24, 28 n. 4 (2d Cir.1998).

quirements."). The requirements of due process are not met here and the Court cannot assert personal jurisdiction over Schwitters.[7]

■ "The due process test for personal jurisdiction has two related components: the minimum contacts inquiry and the reasonableness inquiry." *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996). First, the court must determine whether the defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Laborers Local 17*, 26 F.Supp.2d at 598 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "These minimum contacts must rise to a level such that the defendant should reasonably anticipate being haled into court in the forum state." *Laborers Local 17*, 26 F.Supp.2d at 598. Second, the court asks "whether the assertion of personal jurisdiction . . . is reasonable under the circumstances of the particular case." *Metropolitan Life*, 84 F.3d at 568. A court must "make a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case . . . tempered by an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum state." *Laborers Local 17*, 26 F.Supp.2d at 599.

### No Minimal Contacts

■ Plaintiff sets forth no facts demonstrating that Schwitters has had sufficient contacts with New York, or the United States for that matter, to justify this Court's exercise of personal jurisdiction over him. Schwitters is a German resident and a Norwegian citizen, who has never been to New York or the United States and has never conducted any business in New York or the United States.

The principal wrongful act that Plaintiff alleges Schwitters committed—the publication of a defamatory art catalogue occurred in Germany. *See* Compl. ¶¶ 2, 61, 66, 74. Plaintiff's conclusory assertion that Schwitters' role in the art catalogue publication had "foreseeable effects within the forum," Pl. Opp. to Schwitters' Mem. at 15, is not sufficient to satisfy the minimum contacts requirement. *See e.g., Huang v. Sentinel Government Securities,* 657 F.Supp. 485, 489, 489 n. 3 (S.D.N.Y. 1987) (stating that "[w]ith respect to effects in the forum caused by acts done elsewhere, the test for *in personam* jurisdiction is somewhat more demanding than just some causal relation" and holding that "the effect must occur as a direct and foreseeable result of the conduct outside the territory") (internal citations omitted). **"[W]hen a court bases personal jurisdiction on effects in a state caused by acts done elsewhere, it must proceed with caution, particularly in an international context."** *Id.* at 489 (internal citations omitted) (emphasis added). Any connection between Schwitters alleged activity in Germany (which primarily involved German entities), and the injuries allegedly sustained by Plaintiff in the United States (i.e., potential lost sales) is tenuous at best. *See, e.g., Van Essche v. Leroy,* 692 F.Supp. 320, 326 (S.D.N.Y.1988) ("The mere possibility of foreseeable consequences in New York does not give New York *in personam* jurisdiction.") (internal citations omitted). It does not remotely provide Schwitters with the "fair warning" required by the due process clause. *See, e.g., Metro-*

---

7. Because the exercise of jurisdiction under either C.P.L.R. § 302(a)(2) or Fed.R.Civ.P. 4(k)(2) would not comport with due process, there is no reason for the Court separately to address all of Plaintiff's jurisdictional arguments.

*politan Life*, 84 F.3d at 567 ("[T]he Due Process Clause protects [an individual's] liberty interest and gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (internal citations omitted).

Plaintiff's conclusory argument that personal jurisdiction over Schwitters is proper because Schwitters was a member of a conspiracy to destroy Galerie's business and because his co-conspirators committed acts in furtherance of the conspiracy in New York, Pl. Opp. to Schwitters' Mem. at 18, is similarly unpersuasive. As discussed, *infra*, Plaintiff has failed to plead facts sufficient to sustain its conspiracy theory. *See, e.g., Stewart v. Crosswalks Television Network*, No. 98 Civ. 7316, 2002 WL 265162, at *6 (S.D.N.Y. Feb.25, 2002) (dismissing federal claims where plaintiffs "failed to provide the factual basis for their claims of conspiracy"). Accordingly, the acts of the other Defendants in New York do not provide the Court with a proper basis to assert jurisdiction over Schwitters. *See, e.g., Heinfling v. Colapinto*, 946 F.Supp. 260, 265 (S.D.N.Y.1996) (no personal jurisdiction over out-of-state defendants where plaintiff failed to allege a "viable theory of [conspiracy]" and thus could not impute in-state acts to out-of-state defendants).

**Reasonableness**

 Plaintiff's jurisdictional allegations also fail the reasonableness inquiry which requires a court to evaluate the following factors: "(1) the burden the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of the controversy; and (5) the shared interests of the states in furthering substantive social policies." *Metropolitan Life*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Under this analysis, it would clearly be unreasonable for this Court to exercise jurisdiction over Schwitters. First, litigating the case in New York will undoubtedly (financially) burden Schwitters, who has never been to New York and does no business here. Second, New York would not appear to have as much interest—e.g., as compared to Germany—in resolving Plaintiff's dispute with Schwitters. Third, Plaintiff is not significantly prejudiced if it is compelled to litigate its claims in Germany, where Plaintiff's main office is located. Compl. ¶ 2. Fourth, since most of the alleged unlawful activity took place in Germany, the evidence and many of the witnesses will likely be located there. Litigating the case in New York would not be the most efficient way to resolve the dispute. *See, e.g., Metropolitan Life*, 84 F.3d at 574 ("[I]n evaluating [the efficient administration of justice factor], courts generally consider where witnesses and evidence are likely to be located."). Fifth, Germany unquestionably has a strong interest in enforcing its own business competition laws with respect to tortious acts allegedly committed in its own country by its own residents. *See, e.g., Aerogroup Int'l, Inc. v. Marlboro Footworks, Inc.*, 956 F.Supp. 427, 442 (S.D.N.Y.1996). Because there must be a "stronger showing of reasonableness" where there is a "weak showing of minimum contacts," the Court finds that the reasonableness test has not been met here. *Id.* at 442.

**B. Defendants' Motion To Dismiss The Lanham Act Claim**

 In order to establish a violation of 15 U.S.C. § 1125(a)(1)(B), a plaintiff

must show that (1) defendants made a false or misleading representation regarding the nature, characteristics or quality of plaintiff's services; (2) the representations were used in commerce; (3) the representations were made in the context of commercial advertising or promotion; and (4) defendants' actions made plaintiff believe it would be damaged by the representations. *National Artists Mgm't Co., Inc. v. Weaving,* 769 F.Supp. 1224, 1230 (S.D.N.Y. 1991). Courts also require that any alleged Lanham Act misrepresentation concerning a plaintiff's products or services: (1) consist of commercial speech; (2) be made by defendants who are in commercial competition with plaintiff; and (3) are stated for the purpose of influencing customers to buy defendants' goods or services. *Gillette Co. v. Norelco Consumer Prods. Co.,* 946 F.Supp. 115, 133 (D.Mass. 1996). A claim under 15 U.S.C. § 1125(a)(1)(B) requires a fundamental showing that the plaintiff is in commercial competition with defendants. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 942 F.Supp. 209, 215 (S.D.N.Y. 1996); *Rosenfeld v. W.B. Saunders,* 728 F.Supp. 236, 242 (S.D.N.Y.1990). That showing, even at the motion to dismiss stage, is not made here.

Plaintiff's Lanham Act claims against Dabrowski, Ordonez, and Shatskikh fail because they do not set forth the required elements, i.e., that these Defendants were in commercial competition with Plaintiff.[8] Plaintiff alleges that Dabrowski made false and disparaging comments about art work owned and sold by Plaintiff to one of Plaintiff's potential customers. Compl. ¶¶ 43–51. And, according to Plaintiff, Shatskikh and Ordonez arranged for a false and misleading article to be published which threatened to spread the false allegations contained in the Sprengel catalogue. *Id.* ¶¶ 75–78.[9] Significantly, none of these alleged misstatements on their face were uttered by parties in commercial competition with Plaintiff. Dabrowski, Shatskikh, and Ordonez are not alleged to be art galleries. Rather, they are said to be art experts. Compl. ¶¶ 19, 20, 23. There are no allegations in Plaintiff's Complaint that Dabrowksi, Shatskikh, Ordonez (or Schwitters, for that matter) are commercial competitors of Plaintiff.[10]

Plaintiff's Lanham Act claims against Hutton and Hutton Galleries—who are presumably alleged to be in commercial competition with Plaintiff—fail because, among other reasons, they do not allege that Hutton or Hutton Galleries made a false or misleading representation regarding Plaintiff's art work.[11] *See* 15 U.S.C. § 1125(a)(1)(B) (prohibiting false or misleading representations regarding the nature of one's goods or services); *Nadel v. Play–By–Play Toys & Novelties, Inc.,* 208 F.3d 368, 383 (2d Cir.2000) (a claim under

**8.** Because Plaintiff's Complaint is deficient with respect to this factor, the Court need not address the other Lanham Act factors as they relate to these Defendants (and does not suggest here that such other factors have been established by Plaintiff).

**9.** Plaintiff alleges that Schwitters arranged for the publication of an art catalogue in connection with the exhibit of Russian Avant Garde art at the Sprengel, which catalogue allegedly falsely challenged the provenance of art works owned and sold by Plaintiff. *Id.* ¶¶ 61–74. However, for the reasons set forth in Part III.A above, the case against Schwitters is dismissed.

**10.** In addition, the Sprengel art catalogue is described as an academic catalogue associated with a museum exhibit. Compl. ¶ 63.

**11.** Because Plaintiff fails to allege a fundamental element of a Lanham Act claim against Hutton and Hutton Galleries, the Court need not address the other Lanham Act factors as they relate to these Defendants. *See supra* note 8.

15 U.S.C. § 1125(a)(1)(B) requires "that misleading or untruthful statements have been made for the purpose of commercial advertising or promoting a party's goods, services, or commercial activities").

Plaintiff's attempt to salvage their Lanham Act claims against all Defendants by alleging that Defendants were engaged in a conspiracy also fails. Plaintiff alleges that Defendants Dabrowski, Shatskikh, Ordonez (and Schwitters) conspired with Hutton and Hutton Galleries to harm Plaintiff. Compl. ¶ 6 ("At specific issue in this case are the efforts of Hutton and its co-conspirators to destroy Galerie through two related schemes.").

▮▮▮ A conspiracy requires a showing "that two or more persons are acting together to effectuate an unlawful purpose," and "assumes an agreement so to act, either by express assent or inference from conduct." *Sackman v. Liggett Group, Inc.*, 965 F.Supp. 391, 394 (E.D.N.Y.1997) (internal citations omitted). But Plaintiff does not adequately allege the elements of a conspiracy among the Defendants.[12] Rather, Plaintiff asks the Court to infer on this motion the existence of a conspiracy principally based upon the prior relationships among the Defendants. Plaintiff further asks the Court to infer that Hutton and Hutton Galleries are the motivating force behind the alleged conspiracy principally based upon the allegation that (only) Hutton and Hutton Galleries stand to benefit from any commercial harm inflicted on Plaintiff. *See* Pl. Opp. to Def. Mem. at 22 ("[D]ue to the small market for Russian Avant Garde art ... anything that harms Galerie necessarily helps Hutton. Hence, publicly attacking the origin

of Galerie's artwork amounts to promotion for Hutton."). These tenuous allegations are legally insufficient to support Plaintiff's conspiracy claim. *See, e.g., Nat'l Congress for Puerto Rican Rights v. City of New York,* 75 F.Supp.2d 154, 168 (S.D.N.Y.1999) (dismissing § 1983 conspiracy claim and stating that "where a conspiracy claim is conclusory and fails to allege facts which suggest an agreement among the parties, the complaint must be dismissed"); *Nweke v. Prudential Ins. Co.,* 25 F.Supp.2d 203, 219 (S.D.N.Y.1998) ("Conclusory allegations are insufficient to meet the somewhat stringent pleading requirements of this Circuit when conspiracy is alleged.").

Plaintiff seems to rely upon the fact that some of the Defendants had prior business or personal relationships. For example, Plaintiff contends that both Ordonez and Dabrowski previously worked at the Museum of Modern Art in New York, that Hutton and Hutton Galleries previously retained Ordonez in connection with the Boule collection and the Larinov exhibit, that Shatskikh's sons received educational support from Hutton and Hutton Galleries, and that both Shatskikh and Ordonez were consulted by the Sprengel regarding the art catalogue it published. Compl. ¶¶ 20–21, 23, 27–34. But mere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim. *See e.g., Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd.,* 85 F.Supp.2d 282, 298 (S.D.N.Y.2000) (allegations "that defendants had worked together previously" are

---

**12.** To establish conspiracy, a plaintiff must allege the primary tort and the following four elements: "(1) an agreement between two or more parties, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage or injury." *World Wrestling Federation Entertainment, Inc. v. Bozell,* 142 F.Supp.2d 514, 532 (S.D.N.Y.2001).

insufficient to create an inference of the fraudulent intent to enter a conspiracy); *Stern v. Leucadia Nat'l Corp.*, 644 F.Supp. 1108, 1112 (S.D.N.Y.1986) (plaintiff's conclusory allegation of conspiracy is unsupported where plaintiff merely stated a relationship among alleged co-conspirators).

Plaintiff also seeks to build its conspiracy case upon thin allegations that Hutton and Hutton Galleries stood to gain from Plaintiff's economic misfortunes. *See* Compl. ¶ 3 ("[A]ny time Galerie is harmed by false claims that it sells inauthentic art, Hutton is necessarily assisted because it is Galerie's only major competitor in the New York market."). The fact that Hutton and Hutton Galleries benefit when Plaintiff suffers, even if true, does not lead to the conclusion that Hutton and Hutton Galleries are involved in a conspiracy with Defendants Dabrowski, Shatskikh, Ordonez (and Schwitters). Plaintiff is required to plead a set of facts which, if true, would support its claim that Hutton and Hutton Galleries are engaged with the other Defendants in a conspiracy to harm Plaintiff's commercial interests. *See, e.g., Stewart*, 2002 WL 265162, at *6 ("A complaint cannot survive a motion to dismiss if it contains only conclusory allegations of conspiracy, but does not support those allegations with averments of underlying facts.").

While complaint allegations must generally be taken as true for purposes of a motion to dismiss, it does not follow that conclusory allegations and speculation, as presented here, will defeat such a motion. *See, e.g., Aiken v. Nixon*, 236 F.Supp.2d 211, 221 (N.D.N.Y.2002) (plaintiff cannot defeat a motion to dismiss "with conclusory allegations, unwarranted speculation, unsupported deductions, or legal arguments cast as factual pleadings"). "While the pleading standard under Rule 8 is a liberal one, mere incantation of the words

'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements." *Loftus v. Southeastern Pa. Transp. Auth.*, 843 F.Supp. 981, 987 (E.D.Pa.1994); *see also Caraveo v. Nielson Media Research, Inc.*, No. 01 Civ. 9609, 2003 WL 169767, at *4 (S.D.N.Y. Jan.22, 2003) ("conclusory allegations of a conspiracy ... do not meet the standards of pleading a conspiracy claim").

## C. Plaintiff's Declaratory Judgment Claim

Defendants contend that the declaratory relief sought by Plaintiff pursuant to 28 U.S.C. § 2201, namely a declaration that Plaintiff has not sold works of art that are not genuine, is a "bizarre—if not frivolous—request. [T]here are no facts or legal claims in the complaint that could possibly support such an outlandish request for relief." Def. Mem. at 35.

Plaintiff alleges that "there is a very real dispute between the parties as to the authenticity of the works ... Defendants are also plainly in a position to jeopardize the Plaintiff's rights as it already appears from the Complaint that two sales may have been lost due to the Defendants' false accusations about the authenticity of the artwork Galerie sells." Pl. Opp. to Def. Mem. at 39.

"The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 633 (Fed.Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). "A justiciable controversy is one between parties having adverse legal interests, of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment." *Phoenix Mutual Life Ins. Co. v. Seafarers Officers & Employees Pension Plan*, 128 F.R.D. 25, 28 (E.D.N.Y.1989). "There is no justiciable controversy unless

the defendant[s][are] in a position to place plaintiff's rights in jeopardy, and the threat to those rights must be shown to have some basis." 43 N.Y. Jur.2d, *Declaratory Judgment*, § 19 (2000).

No justiciable controversy exists because, as noted, there is no jurisdiction as to Schwitters and the Complaint is deficient as to the remaining Defendants. Thus, Plaintiff seeks a "declaration of legal rights unrelated to any actual, live dispute." *Brunson v. Clark*, No. 94 Civ. 9256, 1996 WL 559965, at *2 (S.D.N.Y. 1996); *S. Jackson & Son v. Coffee, Sugar & Cocoa Exchange*, 24 F.3d 427, 431–32 (2d Cir.1994) ("[W]here the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.") (internal citations omitted); *see also Robinson v. Commissioner of Jurors*, 419 F.Supp. 1189, 1191 (S.D.N.Y.1976) (stating that a declaratory judgment "should not be granted unless the court is satisfied that all persons who have an interest in the determination of the questions raised in the suit are before the court").

### D. State Law Claims

In light of the Court's dismissal of Plaintiff's federal claim under the Lanham Act, the Court declines to resolve Plaintiff's state law claims of tortious interference with business expectancy and defamation. *See, e.g., Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *see also* 28 U.S.C. § 1367.

### IV. Conclusion

For the foregoing reasons, Defendant Schwitters' motion to dismiss for lack of personal jurisdiction is granted and the remaining Defendants' motion to dismiss

the Complaint in its entirety is also granted. Plaintiff may pursue its claims in state court or may move for leave to amend the Complaint within twenty (20) days of the date of this Decision and Order.